UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X

JESSAMY ROUSON, *on Behalf of the Estate of John H. Rouson*,

                Plaintiff,

    -against-

TANIA EICOFF and RICHARD EICOFF,

                Defendants.

----------------------------------------------------------- X

MEMORANDUM AND ORDER

04-CV-2734 (ARR) (KAM)

MATSUMOTO, United States Magistrate Judge:

      Plaintiff Jessamy Rouson moves to compel non-party the New York State Banking Department ("Banking Department") to produce documents in response to a subpoena served by plaintiff on the Banking Department on April 24, 2006 and returnable May 19, 2006. (See Subpoena for Documents, Annexed as Ex. 1 to Doc. No. 66, Letter from Megan Prendergast, dated June 27, 2006.) For the reasons that follow, the Court grants in part and denies in part plaintiff's motion to compel.

## BACKGROUND

      On June 30, 2004, plaintiff Jessamy Rouson, on behalf of the estate of her father, John Rouson, commenced this action against defendants Tania and Richard Eicoff, alleging that, beginning in 1988, when John Rouson was disabled by two strokes, until Rouson's death in March 2000, the Eicoffs systematically defrauded Mr. Rouson out of several hundred thousand dollars

while purportedly caring for Mr. Rouson and managing his finances. (Doc. No. 1, Compl. ¶ 13.) Specifically, plaintiff complains that Tania Eicoff misappropriated funds belonging to Mr. Rouson and held by Chase Manhattan Bank, CitiBank and Marine Midland Bank, by forging Mr. Rouson's signature on checks drawn on these accounts and then depositing them in an account at Northfield Savings Bank, which she established in her and Mr. Rouson's names. (Id. ¶¶ 33, 53-57.) Plaintiff further alleges that Tania Eicoff, by improperly utilizing her designation as Mr. Rouson's "power-of-attorney" and forging Mr. Rouson's signature, withdrew funds from the Northfield Savings Bank account and, without Mr. Rouson's consent, deposited those funds into accounts held by her and her husband for their own personal benefit. (Id. ¶¶ 59-74.) Plaintiff asserts violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq*. and state law.

On April 24, 2006, plaintiff served a subpoena on the New York State Banking Department, commanding that it produce "[a]ll reports of examinat[ion]s and investigations, correspondence and memoranda concerning or arising out of [its] investigation of Northfield Savings Bank . . . in connection with Jessamy Rouson's complaint that, *inter alia*, Richard and Tania Eicoff misappropriated funds from John Rouson by forging signature cards and checks." (Subpoena, Annexed as Ex. 1 to Doc.

No. 66, Letter from Megan Prendergast, dated June 27, 2006.)

Following review of the subpoena by the Superintendent of Banks, by letter dated June 2, 2006, the Banking Department objected to disclosure of the requested documents on the ground that the information requested is protected from disclosure by New York State Banking Law § 36(10), which provides that "all reports of examinations and investigations, correspondence and memoranda concerning or arising out of such examinations and investigations . . . shall be confidential communications, shall not be subject to subpoena and shall not be made public unless, in the judgment of the superintendent, the ends of justice and the public advantage will be subserved by the publication thereof . . . ."

On June 28, 2006, plaintiff moved this Court for an order compelling the State Banking Department to disclose documents in response to the subpoena, arguing that (1) the Banking Department waived any objection to the subpoena, because it failed to object within the 15-day period provided for in Fed. R. Civ. P. 45(c)(2)(B), and (2) the Court should compel disclosure of the requested documents because "the ends of justice and the public advantage will be served by the publication thereof." (Doc. No. 65, Letter from Jonathan D. Warner.) The Banking Department opposed, and simultaneously submitted to the Court, for *in camera* review, documents

responsive to the subpoena, along with a privilege log.

However, the Banking Department excluded those documents which it claims relate to a joint investigation of Northfield by it and the Federal Deposit Insurance Corporation ("FDIC"), because the FDIC had not consented to disclosure of such information. See 12 C.F.R. § 309.5(g)(8) ("A request for records may be denied if the requested record contains information . . . contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of the FDIC or any agency responsible for the regulation or supervision of financial institutions.")

Further, the FDIC has submitted to the Court a copy of a letter from FDIC to the Banking Department, in which the FDIC noted that the documents requested by plaintiff's subpoena appeared to be "exempt" documents pursuant to 12 C.F.R. § 309.5(g)(8), and clarified its position with respect to disclosure of the documents pertaining to a joint investigation of Northfield by the FDIC and the Banking Department. (See Doc. No. 69, Letter from Barbara Monheit, dated July 18, 2006.) The FDIC explained, in relevant part:

> While the FDIC has limited authority to make discretionary disclosure of exempt information, it will do so only where 1) such records are relevant to the matter in litigation; 2) a demonstration of good cause justifying the disclosure has been made; and 3) a protective order has been entered that adequately protects the interests of the FDIC, the depository

> institution and third parties.  The FDIC will not
> release exempt documents for use in litigation unless
> there is a clear showing "that the production is in the
> best interests of justice."

(Id. at 2 (quoting 12 C.F.R. § 309.6(b)(8)(ii)).)  The FDIC further noted that it had received no written request for information, as required by 12 C.F.R. § 309.6(b)(8).  (Id.)

Northfield also opposes plaintiff's motion, asserting the work-product privilege, in addition to the privilege provided for in New York Banking Law § 36(10).  Northfield argues that, "[a]lthough [it] is not a party to this action, it nonetheless has standing to be heard in support of a decision of the Superintendent of the NYSBD to invoke the bank examination privilege in refusing to produce documents related to an investigation of which it was a target."  (Doc. No. 71, Letter from Scott S. Christie, dated July 24, 2006, at 3 (citing Raffa v. Wachovia Corp., No. 8:02-CV-1443-T-27EAJ, 2003 WL 21517778, at *3 (M.D.Fla. May 15, 2003)).)

The Court has reviewed the documents provided by the Banking Department *in camera* and, for the reasons set forth below, the Court finds that: (1) the Banking Department has not waived any assertion of privilege; however, (2) the records reviewed by the Court are relevant to the claims and defenses in this action and are thus discoverable by plaintiff, because (a) the state Banking Law privilege is inapplicable in this federal action, (b) disclosure is not barred pursuant to the official

information privilege and (c) the documents do not fall within the scope of the work-product privilege. The Court therefore grants plaintiff's motion to compel with respect to the documents it has reviewed *in camera*, as set forth below. With respect to documents regarding a joint investigation by the Banking Department and the FDIC, plaintiff may make a written request for those documents from the FDIC as provided by its regulations and, should it be necessary, make an appropriate motion to the Court.

## **DISCUSSION**

### *Whether the Banking Department has Waived its Assertion of Privilege*

Plaintiff argues that the Banking Department has waived any assertion of privilege, because it failed to object to the subpoena with 15 days of its service, as required by Fed. R. Civ. P. 45(c). As memorialized in a letter dated May 16, 2006, from the Banking Department to plaintiff's counsel, (see Letter from Megan Prendergast, dated May 16, 2006, attached as Ex. B to doc. no. 66), "after receiving the subpoena, [which was served by plaintiff on May 3, 2006,] the Department requested and received an extension of the return date to respond from the attorney for the plaintiff until June 2, 2006," (doc. no. 66, Letter from Megan Prendergast, dated June 27, 2006, at 2). The Banking Department states that it, "in good faith, believed that this was also an extension of the time provided to serve a written

objection of the production of the documents pursuant to [Fed. R. Civ. P.] 45(c)(2)(B)."  (Id.)  On June 2, 2006, the Banking Department notified plaintiff's counsel that the Superintendent had determined that the requested documents were "confidential communications" and, therefore, the Banking Department would not be providing documents in response to plaintiff's subpoena. (Letter from Megan Prendergast, dated June 2, 2006, attached as Ex. C to doc. no. 66.)

> Rule 45(c)(2)(B) provides, in relevant part:
>
> a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.

Generally, the failure to timely object to a subpoena typically constitutes a waiver of any objections, including an assertion of privilege.  In re DG Acquisition Corp., 151 F.3d 75, 81 (2d Cir. 1998).  However, it is within the Court's discretion to consider a party's objections, even if untimely, for good cause shown and if warranted by the circumstances presented in a particular case. Id. at 81-82; Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 48, 51-52 (S.D.N.Y. 1996); Semtek Int'l, Inc. v. Merkuriy Ltd., No. 3607 DRH, 1996 WL 238538 (N.D.N.Y. May 1, 1996). Courts have excused untimely objections where, *inter alia*, "the subpoenaed witness is a nonparty acting in good faith . . .

[and/or] counsel for witness and counsel for subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged legal basis for the subpoena." Concord Boat Corp., 169 F.R.D. at 48. See also Semtek Int'l, 1996 WL 238538, at *2; In re Goodyear Tire & Rubber Co. Sec. Litig., No. 1:89-0894X, 1991 WL 172930, at *1 (N.D.Ohio June 21, 1991).

Here, the Court finds that the circumstances indicate that the Banking Department, which is not a party to this action, was acting in good faith. On May 11, 2006, just one week after the subpoena was served, counsel from the Banking Department was in contact with plaintiff's counsel regarding extending the date for the Department's response to the subpoena. (See Letter from Megan Prendergast, dated May 16, 2006, annexed as Ex. B to doc. no. 66.) During that conversation, counsel apparently discussed the confidential nature of the documents. (See id.) Thus, the Banking Department reasonably believed that the extension of time to respond to the subpoena included an extension of time to object. Plaintiff agreed to allow the Banking Department until June 2, 2006 to respond, and the Banking Department formally objected as of that date. Therefore, the Court finds that the Banking Department's failure to formally object to the subpoena within 15 days after service did not constitute a waiver of its assertion of privilege.

## *Whether the Information Sought by Plaintiff's Subpoena is Subject to Disclosure*

**1.     Applicability of New York State Banking Law § 36(10)**

All parties, including plaintiff, appear to agree that the privilege provided for in New York State Banking Law § 36(10) applies here.  However, this action is in federal court on the basis of federal question jurisdiction, arising from plaintiff's assertion of a RICO claim.  Assertions of privilege in federal question cases, even those involving pendant state law claims, are governed by federal common law, rather than state law.  <u>von Bulow v. von Bulow</u>, 811 F.2d 136, 141 (2d Cir. 1987); <u>Equal Employment Opportunity Comm'n v. Boston Market Corp.</u>, No. CV 03-4227, 2004 WL 3327264, at *2 (E.D.N.Y. Dec. 16, 2004); <u>Wilkinson v. Balsam</u>, No. 2:94-CV-175, 1996 WL 192922, at *1 (D.Vt. Jan. 29, 1996).  The Court thus examines whether an analogous federal common law privilege regarding bank records applies here.

**2.     The Official Information Privilege**

Federal courts "have long recognized that the report of a bank examiner is protected by a qualified privileged," classified within the "official information" privilege, and sometimes referred to as the privilege for "intragovernmental opinions."  <u>In re Subpoena Served upon Comptroller of Currency</u>, 967 F.2d 630, 633 (D.C. Cir. 1992); <u>see</u> <u>In re Franklin Nat'l Bank</u>

Sec. Litig., 478 F. Supp. 577, 580-82 (E.D.N.Y. 1979) (referring to the privilege for "official information"); Lundy v. Interfirst, Corp., 105 F.R.D. 499, 502 (D.D.C. 1985) (referring to the "intragovernmental opinions" privilege).

"The privilege protects only expressions of opinion or recommendations in intragovernmental documents; it does not protect purely factual material." In re Franklin Nat'l Bank Sec. Litig., 478 F. Supp. at 581. Thus, as an initial matter, the Court has examined, *in camera,* the documents provided by the Banking Department to determine whether they include protected opinions of the Department, or whether they merely contain unprotected factual data. See Principe v. Crossland Savings, FSB, 149 F.R.D. 444, 448 (E.D.N.Y. 1993) (noting that several district courts "have actually examined bank examiners' reports *in camera* and found them to be all or partially factual" and citing cases).

Even with respect to opinions and recommendations, the privilege is not absolute: "[T]he privilege is a discretionary one that depends upon Ad hoc considerations of competing policy claims." In re Franklin Nat'l Bank Sec. Litig., 478 F. Supp. at 582 (quoting United States v. Article of Drug Consisting of 30 Individually Contained Jars More of Less, 43 F.R.D. 181, 190 (D.Del. 1967)). The Court must weigh the government's interest in nondisclosure against those of the litigants and society in

"accurate judicial fact finding." Id. The Court shall consider the following factors:

> "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence . . . ; (iii) the 'seriousness' of the litigation and the issues involved . . .; (iv) the role of the government in the litigation . . . ; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable."

Id. at 583. The Court further considers that, "[a]s a general rule the lower the level of the official making the observation and the lower the level of abstraction in the writing, the less the need for the privilege." Id. at 585. The party asserting the privilege has the burden of demonstrating its applicability. Schreiber v. Society for Savings Bancorp., Inc., 11 F.3d 217, 220 (D.C. Cir. 1993).

### a. Memorandum by Senior Bank Examiner Peter Fyfe, dated January 25, 2005

The first document submitted for *in camera* review is a memorandum authored by Senior Bank Examiner Peter Fyfe, dated January 25, 2005. (*In Camera* Submission, pages 1-3.) This is a report describing the Banking Department's onsite visitation of Northfield for the purpose of ascertaining what steps Northfield had taken to investigate the complaint filed by plaintiff with the FDIC and the Banking Department. The report specifically states that it does not examine "the validity of Ms. Rouson's complaint." (Id. at 1.) This memorandum is, through and

through, a purely factual recitation of the allegations made by plaintiff and the nature of Northfield's response.  It contains but one mere "conclusion of fact" by the bank examiner.  This statement cannot accurately be described as an "opinion," because it does not reveal the deliberative process of the bank examiner. In re Franklin Nat'l Bank Sec. Litig., 478 F. Supp. at 584-85 (recognizing that "statements sounding like opinions can contain significant factual content").  Therefore, because none of the statements in this document fall within the scope of the privilege, it should be disclosed to plaintiff.[1]

    **b.   Post Mortem Evaluation Rouson/Eicoff Investigation**

This document (*In Camera* Submission, at 8-9), to the extent provided (portions have been redacted as relating to the joint investigation of the Banking Department and the FDIC), is likewise purely factual in nature.  It merely relates Ms. Rouson's complaints regarding Northfield and states that, although the Banking Department initially concluded that it did not have jurisdiction over her complaint, "the Division [later] reopened the case for further investigation following receipt of

---

[1] The Court notes that the parties do not dispute the relevance of the requested documents.  Upon review, the Court finds that all the documents provided for *in camera* review are relevant to the claims and defenses asserted in this action. Pages 4-7 are designated "Redacted – Not Relevant;" thus, the Court has not reviewed those documents.

-12-

additional information." (*In Camera* Submission, at 9.) This document should also be provided to plaintiff.[2]

### c. Internal Memorandum Regarding Suggested Scope of Investigation

This document (*In Camera* Submission, at 18-19) is deliberative in nature, and thus appears to fall within the scope of the privilege, to the extent it outlines the scope of the Banking Department's examination. However, upon balancing the competing interests, the Court finds that the fact-based deliberations in this document should nevertheless be disclosed, with redactions of account numbers. The information contained therein is relevant to, and is likely to lead to the discovery of evidence regarding, plaintiff's claims that defendant misappropriated funds belonging to John Rouson and breached a fiduciary duty owed to Mr. Rouson. Further, the "seriousness" of plaintiff's allegations outweigh any potential for "future timidity by government employees who will be forced to recognize that their secrets are violable." The document involves deliberation in the sense that its author outlined the scope of the Banking Department's investigation of Ms. Rouson's complaint. However, it does not reveal conclusions or opinions about the

---

[2] Pages 10-11 are designated "Redacted – Joint Material of FDIC and NYSBD." Pages 12-17 are designated "Redacted – Not Relevant." The Court has not reviewed these documents.

investigation itself. Thus, the Banking Department shall disclose this document to plaintiff, with redactions of all account numbers.

### d. Internal Email between Banking Department Personnel Dated December 21, 2004

This document primarily contains factual information, except for the author's conclusion that "the Banking Department cannot assist Ms. Rouson" and other statements to that effect. (*In Camera* Submission, at 20.) The Court finds, however, that the negligible statements of "opinion" do not render the document privileged. When statements of opinion or conclusions are so intertwined with factual allegations that to redact them would "distort the tenor of the document," as it would here, it is within the Court's discretion to allow full disclosure. In re Franklin Nat'l Bank Sec. Litig., 478 F. Supp. at 585 (quoting Moore-McCormack Lines, Inc. v. I.T.O. Corp., 508 F.2d 945, 949 (4th Cir. 1974)). Moreover, this is not the type of sensitive information likely to cause embarrassment, and thus future timidity, by its author. Accordingly, this document is subject to disclosure.

### e. Internal Email Dated March 28, 2005

Without revealing the contents of this communication (*In Camera* Submission, at 21), the Court finds that it reveals the

recommendation of a Banking Department employee, marginally relating to plaintiff's claims, and may thus be withheld.

### f. Internal Email dated March 28, 2005

Like the "Internal Memorandum Regarding Suggested Scope of Investigation" (*In Camera* Submission, at 18-19), the author of this internal email (*In Camera* Submission, at 22) discusses the investigation of Ms. Rouson's complaint, but does not make conclusions or opinions about the investigation itself. Therefore, the Court finds that its relevance outweighs other competing government interests. This document should be disclosed to plaintiff.

### g. Memorandum Concerning Rouson Investigation by Banking Department Counsel Jay Kane, Esq.

This document (*In Camera* Submission, at 23-25) primarily contains factual statements and descriptions of Ms. Rouson's complaints. Any other statements are more appropriately described as "conclusions of fact" rather than opinions of the agency. Further, the Court finds the statements in this document highly relevant to plaintiff's claims. Accordingly, the Court orders that this document be disclosed.

**3.   Northfield's Assertion of the Work-Product Privilege**

As an initial matter, it is unclear whether Northfield has standing to oppose plaintiff's motion, because it is not a party to this action and has not been subpoenaed.

"In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness." Langford v. Chrysler Motors Corp., 513 F.2d 1121, 1126 (2d Cir. 1975) (citing 5A J. Moore, Federal Practice ¶ 45.05(2) (2d ed. 1974)). Courts have applied the same principle in determining whether a non-party has standing to object to a subpoena issued to another non-party. Thus, courts have found standing where a non-party asserts that the information sought by the subpoena was protected by the attorney-client privilege, as in Ungar v. Palestinian Auth., 400 F. Supp. 2d 541, 553 (S.D.N.Y. 2005), or where the non-party demonstrates that it possesses a privacy interest in the information sought, as in Catskill Dev., L.L.C. v. Park Place Enter. Corp., 206 F.R.D. 78, 93 (S.D.N.Y. 2002). On the other hand, a non-party lacks standing to object to a subpoena, which, "by its express terms, seeks no information from or about [the non-party objector] and excludes any privileged communications." First Indemnity of Amer. Ins. Co. v. Shinas, No. 03 Civ. 6634, 2005 WL 3535069, at *3 (S.D.N.Y. Dec. 23, 2005).

Here, the subpoena explicitly seeks information

regarding the handling of accounts by Northfield and, thus, to a certain degree, Northfield has a legitimate basis for contesting disclosure here. However, the privileges it asserts do not protect the information sought by plaintiff's subpoena. As discussed above, the documents sought are not protected by the official information privilege.

Northfield also argues that the information sought by plaintiff's subpoena is protected pursuant to the work-product privilege. The work-product privilege is embodied in Fed. R. Civ. P. 26(b)(3), which provides, in relevant part:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, . . . or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

"The work-product doctrine . . . is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting Hickman v. Taylor, 329 U.S. 495, 510-11 (1947)).

In order to determine whether a document has been prepared "in anticipation of litigation," the Court must ask "whether the documents were prepared 'because of' existing or expected litigation." Id. at 1198, 1202. Information falling within this rubric is deemed "*eligible* for work-product privilege. The district court can then assess whether the party seeking discovery has made an adequate showing of substantial need for the document and an inability to obtain its contents elsewhere without undue hardship." Id. at 1203 (emphasis in original). Even where a showing of hardship has been made, however, the court "shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Id. at 1197 (quoting Fed. R. Civ. P. 26(b)(3)); see also id. at 1204.

The privilege does not apply with respect to those documents responsive to plaintiff's subpoena which the Banking Department has provided to the Court for *in camera* review. The Court initially notes that none of the documents were authored by Northfield or any of its representatives. They were all authored by personnel and representatives of the Banking Department. Thus, although the documents could have been prepared by the Banking Department in anticipation of a potential litigation against Northfield, they were not, as Northfield contends,

-18-

prepared as a result of Northfield's "concern that [plaintiff] was seeking evidence to join Northfield as a defendant in this action." (Doc. No. 71, Letter from Scott S. Christie, dated July 24, 2006, at 4.) Nor were any of the documents prepared by Ernst & Young, which Northfield contends acted "as both an agent of Northfield's counsel and as an investigator for the [Banking Department]." (Id. at 5.)

Moreover, the documents contain no "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative" of Northfield. Indeed, as discussed above, the statements of the *Banking Department's* attorney and examiners contained therein are primarily factual in nature. To the extent they are deliberative, these documents reflect the Banking Department's "thought processes" in investigating Ms. Rouson's complaints regarding Northfield; they do not reveal any of Northfield's strategies with respect to anticipated litigation against it by plaintiff. Therefore, because Northfield fails to assert a valid claim of privilege, it lacks standing to oppose plaintiff's motion to compel.

## CONCLUSION

In sum, the Banking Department has not fulfilled its burden of demonstrating the applicability of either the New York State Banking Law § 36(10) or the official information privilege,

except with regard to the "Internal Email Dated March 28, 2005," at page 21.  Further, Northfield has not demonstrated that it has standing to oppose plaintiff's motion to compel, because it has failed assert a valid claim of privilege.  Accordingly, plaintiff's motion to compel the Banking Department to respond to its subpoena is granted, to the extent that the Banking Department shall provide to plaintiff those documents that the Court has had the opportunity to review *in camera*, with redactions noted above, and excluding the "Internal Email Dated March 28, 2005."  With respect to those documents alleged to concern a joint investigation between the Banking Department and the FDIC, plaintiff's motion is denied without prejudice to plaintiff submitting an appropriate written request to the FDIC to produce such documents and thereafter making any further motion to compel as she deems necessary.  Plaintiff's counsel shall serve a copy of this Memorandum and Order on counsel for the Banking Department, the FDIC and Northfield, and shall file, by ECF, a declaration of service no later than October 13, 2006.

**SO ORDERED.**
Dated:  October 11, 2006
        Brooklyn, NY

/s/
**Kiyo A. Matsumoto**
United States Magistrate Judge